**IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **CLINT REED & RYAN FREDERICK**, *on behalf of themselves and all others similarly situated,* | ) ) ) ) | Case No. 3:22-cv-1984 |
| | ) | Judge James G. Carr |
| | ) | |
| Representative  Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SWANTON WELDING & MACHINING CO., INC.**, | ) ) | |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT
AND DISMISSAL WITH PREJUDICE**

**I.     INTRODUCTION**

Representative Plaintiffs Clint Reed ("Reed") and Ryan Frederick ("Frederick") (together hereinafter "Representative Plaintiffs") and Defendant Swanton Welding & Machining Co., Inc. ("Defendant") (Representative Plaintiffs and Defendant are, collectively, the "Parties") respectfully move this Court to approve the proposed opt-in settlement reached by the Parties and memorialized in the Collective Action Settlement Agreement and Release ("Settlement" or "Agreement"), attached as Exhibit A, and dismiss this case with prejudice by entering the proposed Order Granting Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice, attached as Exhibit C.

The proposed Settlement will resolve bona fide disputes involving alleged unpaid compensation and related damages claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("Ohio Wage Act"); and the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA") Article II, Section 34a of

the Ohio Constitution ("Ohio Const."); and O.R.C. § 2307.60 (Ohio Wage Act, OPPA, Ohio Const., and O.R.C. § 2307.60 shall be collectively referred to as the "Ohio Acts").

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Settlement was achieved during the course of arms-length negotiations among the Parties, by and through experienced counsel, and resolves bona fide disputes between the Parties. If approved by the Court, the Settlement will involve settlement payments to Representative Plaintiffs and fifteen (15) individual collective members who have joined this action and fit within the conditionally certified class.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit A:    Collective Action Settlement Agreement and Release[1]

Exhibit B:    Declaration of Daniel I. Bryant[2]

Exhibit C:    [Proposed] Order Granting Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds. For the reasons set forth below, the Parties respectfully request that this Honorable Court approve the proposed Settlement reached by the Parties and dismiss this case with prejudice.

---

[1] Hereinafter "Agreement" or "Settlement." All defined terms not explicitly defined herein shall have the meaning ascribed to them in the Agreement.
[2] Hereinafter "Bryant Decl."

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Action

On November 2, 2022, Representative Plaintiffs filed a lawsuit, styled as *Reed &*
*Frederick, et al.*, *v. Swanton Welding & Machining Co., Inc.*, Case No. 3:22-cv-01984, in the
United States District Court for the Northern District of Ohio, Western Division (Toledo, Ohio)
("Action").  In the Action, Representative Plaintiffs asserted, on behalf of themselves and others
allegedly similarly situated to them, a variety of unpaid wages claims against Defendant under the
FLSA and the Ohio Acts. In particular, Representative Plaintiffs alleged that Defendant failed to
pay them, and other similarly situated hourly, non-exempt welding and production employees of
Defendant for all hours worked due to (1) pay-to-shift and/or non-neutral rounding of compensable
hours that over time resulted in the underpayment of wages; (2) unpaid, but interrupted, daily meal
periods of thirty (30) minutes; and (3) the failure to pay at the correct regular rate of pay during
workweeks when employees worked overtime and received a non-discretionary bonuses in
addition to their base hourly wage. (*See* ECF No. 1, Complaint, at PageID # 6-9; ECF No. 11-1,
First Amended Complaint, at PageID # 94-100). Representative Plaintiffs claimed that this failure
resulted in unpaid overtime wages in violation of the FLSA and the Ohio Acts during workweeks
when he and other welding/production employees worked forty (40) or more hours. (*Id.*)

On January 11, 2023 and April 3, 2023, Defendant filed its Answers to Representative
Plaintiffs' Complaint and First Amended Complaint (collectively, "Complaint"), respectively,
denied the allegations contained in the Complaint, maintained that Representative Plaintiffs and
those who they sought to represent were paid for all hours worked, that Representative Plaintiffs
and those who they sought to represent were not entitled to any compensation, and that any unpaid
time was *de minimis*, and asserted more than twenty-five (25) affirmative defenses, including that
its conduct was done in good faith and asserted that the method of computing working time was

3

neutral, among others. (ECF No. 8, Answer to Complaint, PageID # 65-70; ECF No. 15, Answer to First Amended Complaint, PageID # 159-166)

On April 17, 2023, the Parties filed a Joint Stipulation to Pre-Discovery Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. §216(b) ("Stipulation to Conditional Certification"). (*See* ECF No. 17). In the Stipulation to Conditional Certification, the Parties stipulated that this Action was a collective action under the FLSA and agreed upon a manner to send notice out to similarly situated welding/production employees who work/worked at Defendant's three (3) facilities located in Swanton, Ohio, Wauseon, Ohio, and Griffin, Georgia. (*Id*.)

On April 26, 2023, the Court entered an Order Granting Conditional Certification and Approving Notice and Consent. (ECF No. 18) In doing so, the Court conditionally certified a class of "All current and former hourly, non-exempt production employees of Defendant at its three (3) facilities who performed at least 40 hours of work in any workweek beginning three years from April 26, 2023 and continuing through the present ("Putative Collective Members")." (*See* ECF Nos. 17 and 18) The Notice and Consent to Join were distributed to the 172 Putative Collective Members, who had sixty (60) days to opt into the Action. (Ex. A, Agreement, ¶ 5) In addition to Representative Plaintiffs, fifteen (15) individuals opted into the Action ("Opt-In Plaintiffs" unless otherwise specified). (*Id*.) Thereafter, in order to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation, the Parties engaged in substantial efforts to resolve the claims of the Representative Plaintiffs and the Opt-In Plaintiffs (collectively, "Plaintiffs"). (*Id*., ¶ 6; Ex. B, Bryant Decl., ¶ 16)

**B.     Negotiation of The Settlement**

To prepare for these efforts, the Parties engaged in targeted discovery. In particular, Defendant produced the available time and payroll records for the Plaintiffs. (Ex. A, Agreement,

¶ 7-8; Ex. B., Bryant Decl., ¶ 16) The data included dates of employment as well as the available time and pay data for Plaintiffs during the applicable Calculation Period. (*Id.*) Representative Plaintiffs retained a Masters-level economist to construct a damages model for the Calculation Period. (Ex. B., Bryant Decl., ¶ 18) Defendant also constructed its own comprehensive analysis using the time and pay data. (*Id.*) In advance of the Settlement Conference scheduled for March 8, 2024, the Parties exchanged a comprehensive analysis on their factual and legal positions regarding the allegations of the operative Complaint and Defendant's defenses and affirmative defenses. (*Id.*) Following the exchange, they exhausted their efforts until they reached a resolution in principle on February 23, 2024. (*Id.*) The purpose of the Agreement is to fully and finally settle all Released Claims and Representative Plaintiffs' Released Claims that the Plaintiffs may have against Defendant.

## C.      The Settlement Terms

If approved by the Court, the Settlement is the gross settlement amount of Seventy-Eight Thousand and Zero Cents ("$78,000.00"), which sum will cover: (1) all Settlement Awards, as defined below; (2) a Service Award to each Representative Plaintiff, as defined below; and (3) all Representative Plaintiffs' Counsel's attorneys' fees and costs (collectively, "Settlement Payments"). (Ex. A, Agreement, ¶¶ 18, 25, 32-33, and 36-37; Ex. B, Bryant Dec., ¶ 19)

Each Eligible Plaintiff's Settlement Award constitutes his or her *pro rata* share of the Net Settlement Fund, less the sum total of the Ineligible Opt-In Plaintiffs' Settlement Awards, based on the number of workweeks worked by him or her during the Calculation Period, which, for Representative Plaintiffs, is the two-year period preceding the filing of the Complaint and, for each Opt-In Plaintiff, is the two-year period preceding the filing of that Opt-In Plaintiff's Consent Form. (Ex. A, Agreement, ¶¶ 18, 25, 32-33, and 36-37; Ex. B, Bryant Decl., ¶¶ 20-23) The Settlement Awards for Representative Plaintiffs and the Opt-In Plaintiffs reflect a recovery of 1.35 hours per

5

week of pre- and post-shift hours that were rounded down allegedly to the employees' detriment during the Calculation Period (equivalent to 100% of potential recovery); 100% of unpaid overtime for the alleged failure to pay at the correct regular rate of pay; 65% of unpaid, but allegedly interrupted daily 30-minute meal break deductions, and liquidated damages in an amount equal to 100% of alleged untimely and/or unpaid overtime compensation owed during the Calculation Period. (*Id.*) Opt-In Plaintiffs Shawn Ward, Andrew Perchikoff, and Gary Perchikoff (collectively, "Third-Year Opt-Ins") will receive a minimum payment of $125 since any potential recovery of unpaid overtime fell outside of the Calculation Period. Opt-In Plaintiffs John Luck, Christopher Luman, and Martin Garcia (collectively, "Expired Opt-Ins") will receive a minimum payment of approximately $15 in recognition of returning a Consent Form even though each of their respective periods of employment were well beyond the 3-year lookback period and any potential claim of unpaid overtime have all expired. (*Id.*)

Defendant shall allocate 50% of each Plaintiff's individual Settlement Award to alleged lost wage damages, and this amount will be subject to all legally required deductions and reported on IRS Form W-2. (Ex. A, Agreement, ¶ 39) Defendant shall also allocate the remaining 50% of each Plaintiff's Settlement Award to alleged liquidated damages, and this amount will be reported on IRS Form 1099. (*Id.*) Any Settlement Awards that are not cashed within one hundred eighty (180) days will revert back Defendant, and the Agreement shall remain binding on any Plaintiffs who failed to negotiate their Settlement Award check. (*Id.*, ¶ 40)

Subject to this Court's approval, Four Thousand Dollars and Zero Cents ($4,000.00) will be paid to each Representative Plaintiff out of the Global Settlement Fund, in addition to their individual Settlement Awards, for their service as the Representative Plaintiffs. (Ex. A, Agreement, ¶ 33; Ex. B, Bryant Decl., ¶ 33) In addition, Representative Plaintiffs' Counsel shall receive payment of attorneys' fees in the amount of one-third of the Global Settlement Fund, which

is equivalent to Twenty-Six Thousand Dollars and Zero Cents ($26,000), plus litigation costs ($8,312.00), for a total of Thirty-Four Thousand Three Hundred Twelve Dollars ($34,312.00) ("Attorneys' Fees and Costs"). (*Id.*, ¶ 32; Ex. B, Bryant Decl., ¶¶ 37, 39)

In exchange for the total settlement amount and other consideration provided for in the Agreement, the Action will be dismissed with prejudice, and Plaintiffs will release Defendant and other Released Parties from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, under the FLSA, the Ohio Acts, or any other applicable federal, state or local wage-and-hour law relating to unpaid and/or untimely payment of wages, overtime, or compensation of any kind, any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), and any claims for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and service awards. (Ex. A, Agreement, ¶ 42; Ex. B, Bryant Decl., ¶ 34)

## III.    THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b). Court approval is warranted.

### A.    The Seven-Factor Standard Is Satisfied

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it finds that the settlement is "fair, reasonable, and adequate." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *4 (S.D. Ohio Sep. 25, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

7

*Id.*

Application of these principles to this settlement demonstrates that approval is warranted.

### 1.    No Indicia of Fraud or Collusion

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Satterly*, 2020 WL 6536342, at *4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties over contested material factual and legal issues after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. Because there is no indicia of fraud or collusion, this factor favors approval of the settlement.

### 2.    Complexity, Expense and Duration of Litigation Favor Approval

The policy favoring the settlement of collective actions applies here. Wage-and-hour cases are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them. *Gresky v. Checker Notions Co. Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *5 (N.D. Ohio Aug. 26, 2022) (citing *Satterly*, 2020 WL 6536342, at *5). Moreover, the Parties disagree over the merits of Representative Plaintiffs' claims, including whether the alleged off-the-clock work occurred, whether it is compensable, whether meal periods were interrupted or missed at all, whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiffs would be entitled to liquidated damages if they were to prevail on the merits.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the

Plaintiffs promptly and efficiently, and now instead of some unknown time possibly far off in the future.

### 3.    Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Defendant produced relevant employment policies and procedures, timekeeping and payroll records, and both Parties used those same records to create their own damages model. The Parties also conducted their own independent investigations of Representative Plaintiffs' allegations and claims. As such, all Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Representative Plaintiffs prevail on the claims, which allowed the Parties to negotiate a settlement based on facts and data. Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, were complex, and all aspects of the dispute are well-understood by both sides.

### 4.    The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but also recognize that protracted litigation will be uncertain in terms of duration, cost, and result. Moreover, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that Plaintiffs would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the settlement. *Satterly*, 2020 WL 6536342 at *6 ("the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor").

**5.** **Class Counsel and the Representative Plaintiffs Favor Approval**

"The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Satterly*, 2020 WL 6536342 at *7; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. As recently observed with respect to Representative Plaintiffs' Counsel, they "have extensive experience with complex litigation including litigating class actions, FLSA actions, and other wage and hour claims." *Gresky*, 2022 WL 3700739 at *6. "These attorneys are each experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement." *Id*. The same is true here. Plaintiffs' Counsel supports the Settlement as fair and reasonable, and in the best interest of Plaintiffs and the class as a whole, as described in the Declaration of Daniel I. Bryant. Representative Plaintiffs also approve of the Settlement. (Ex. B, Bryant Decl., ¶ 27-40.)  Accordingly, this factor favors approval of the Settlement.

**6.** **The Reaction of Absent Class Members**

If the Court approves the settlement, only Representative Plaintiffs and the Opt-In Plaintiffs will be bound by the Agreement. Those that do not join the case will not.

**7.** **The Public Interest**

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019)

(quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). The public interest favors the settlement of collective/class action litigation, which is especially true in cases involving wage and hour claims because by their very nature, inherently implicate the public interest. *Gresky*, 2022 WL 3700739, at *6 (citing *Wright*, 2018 WL 3966253, at *5). Here, rather than risk the uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Gresky*, 2022 WL 3700739, at *6. Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate. *Harsh*, 2021 WL 4145720, at *7. When a settlement establishes a pool of settlement funds that will be divided among the settlement class members on a pro rata basis based upon their calculated damages, it also ensures an equitable distribution of settlement proceeds that is directly tied to the claims and harm allegedly suffered by the settlement class members and provides them with a proportionate share of the settlement funds. *Harsh*, 2021 WL 4145720, at *7. All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

The Settlement compensates Eligible Plaintiffs for alleged unpaid overtime wages proportionate to the amount of alleged unpaid overtime owed to them as calculated by Representative Plaintiffs' Counsel during the applicable Calculation Period. "This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly*, 2020 WL 6536342, at *8. Based upon Representative Plaintiffs'

11

calculations within the Calculation Period, the Settlement Awards for the Eligible Plaintiffs reflect a recovery as follows: 1.35 hours per week of pre- and post-shift hours that were rounded down allegedly to the employees' detriment during the Calculation Period (equivalent to 100% of potential recovery); 100% of unpaid overtime for the alleged failure to pay at the correct regular rate of pay; 65% of unpaid, but allegedly interrupted daily 30-minute meal break deductions, and liquidated damages in an amount equal to 100% of alleged untimely and/or unpaid overtime compensation owed during the Calculation Period. (Ex. A, Agreement, ¶ 37; Ex. B, Bryant Decl., ¶¶ 20-26) In addition, Third-Year Opt-Ins will receive a minimum payment of $125 since any potential recovery of unpaid overtime fell outside of the Calculation Period. As to the Expired Opt-Ins, they will receive a minimum payment of approximately $15 in recognition of returning a Consent Form even though each of their respective periods of employment were well beyond the 3-year lookback period and any potential claim of unpaid overtime have all expired. (*Id.*) Accordingly, the settlement proceeds are fair, reasonable and adequate.

### C.     The Service Award Is Proper and Reasonable

The Settlement provides for a service award of $4,000 to each Representative Plaintiff. Courts routinely approve service awards in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Thus, service awards are "routinely approved for the simple reason to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Satterly*, 2020 WL 6536342, at *8 (citation omitted). *See Fields v. KTH Parts Indus., Inc.*, No. 3:19-cv-8, 2022 WL 3223379, at *6 (S.D. Ohio Aug. 9, 2022) (Rice, J.) (service awards are "typically justified where the named plaintiffs expend time and effort

beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case.") (citations omitted)).

Here, each Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Plaintiffs' Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. As such, the time and efforts Representative Plaintiffs provided support the requested service payment. (Ex. B, Bryant Decl., ¶ 33) In addition, Representative Plaintiffs each attached their name to a publicly filed lawsuit against their former employer. *Satterly*, 2020 WL 6536342, at *9 (citing *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 and *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, at *9, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting")). Moreover, the proposed Service Awards of $4,000 to each Representative Plaintiff set forth in the Agreement are each within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Gresky*, 2022 WL 3700739, at *7 (approving a service award in the amount of $5,000); *Satterly*, 2020 WL 6536342, at *8-9 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. 11019, at *16–17, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 U.S. Dist. LEXIS 204371, at *21–22, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff).

13

As such, the time and efforts Representative Plaintiffs provided supports the requested service award. (Ex. B, Bryant Decl., ¶ 33.)

### D.      Representative Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

In this case, Representative Plaintiffs are requesting that the Court approve attorneys' fees in the amount of $26,000.00, which represents one-third of the settlement fund. This Court, and other courts in the Sixth Circuit, commonly approve requests to award one-third of settlement awards in FLSA collective actions because 1/3 of the settlement is a "normal fee amount in a wage and hour case." *Harsh*, 2021 WL 4145720, at *3-9 (quoting *Satterly*, 2020 WL 6536342, at *10 (quoting *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.)); *see, e.g.*, *Frederick v. CCH Healthcare OH, LLC, et al.*, No. 3:22-cv-00699-JZ, ECF No. 53 (Jul. 20, 2023) (Zouhary, J.) (approving one-third of total settlement amount); *Purvis, et al. v. OSL Retail Services Corporation*, No. 3:21-cv-1738, ECF Nos. 40-41 (May 25, 2023) (Zouhary, J.) (granting one-third of total settlement amount, equivalent to $266,666.66 in attorneys' fees); *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (finding attorneys' fees in the amount of one-third of the

14

total settlement amount are reasonable); *Adams v. Frontier R.R. Servs., LLC*, No. 2:19-CV-808, 2020 WL 9936704, at *2 (S.D. Ohio June 15, 2020) (finding attorneys' fees in the amount of one-third of the total settlement amount are reasonable); *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District."); *Bailey v. Black Tie Mgmt. Co, LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). As such, the requested fee of 1/3 of the total settlement is reasonable.

This conclusion was recently reiterated in *Harsh*, 2021 WL 4145720 (N.D. Ohio Sep. 13, 2021). In *Harsh*, the Court held that while a court can utilize either the percentage-of-the-fund or the lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *8. The Court further noted that the lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Furthermore, the request for 1/3 of the settlement fund is justified by the results achieved. In the Sixth Circuit, the recovery in wage and hour cases is typically 7–11%. *See Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022)

15

(Sargus, J.); *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (Parker, J.) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) and Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). *See also Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010).

Measured by these standards, Representative Plaintiffs' Counsel contends that, based upon Plaintiffs' calculations, the Eligible Plaintiffs' individual Settlement Awards represent 1.35 hours per week of pre- and post-shift hours that were rounded down allegedly to the employees' detriment during the Calculation Period (equivalent to 100% of potential recovery); 100% of unpaid overtime for the alleged failure to pay at the correct regular rate of pay; and 65% of unpaid, but allegedly interrupted daily 30-minute meal break deductions. The Eligible Plaintiffs' Settlement Awards also represent an amount equal to alleged untimely and/or unpaid overtime compensation in the form of 100% of alleged liquidated damages. (Ex. A, Agreement, ¶ 37) Representative Plaintiffs' Counsel represent that these assumptions are both fair and reasonable to Plaintiffs. (Ex. B, Bryant Decl., ¶ 20-26)

This amount easily exceeds the typical 7–11% recovery and, when compared to recent federal jurisprudence, has also been described as an excellent result. *See Harsh*, 2021 WL 4145720, at *3-9 (N.D. Ohio Sept. 13, 2021) (Helmick, J.) (describing recovery of 42% of the alleged overtime damages as an "excellent result" in the final approval Order because it represented "substantial relief" to the impacted individuals). *See also Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *2 (S.D. Ohio Dec. 2, 2016) (Watson, J.) (approved an FLSA settlement where the individual payments represented 55% of wages allegedly owed).

Per the Settlement Agreement, Representative Plaintiffs request payment of attorneys' fees to Representative Plaintiffs' Counsel of one-third of the Total Settlement Amount, or $26,000. Consequently, just over one-third of the settlement is allocated to Representative Plaintiffs' Counsel to cover attorney's fees. (Ex A, Agreement, ¶ 32; Ex. B, Bryant Decl. ¶¶ 19, 37) That amount "reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279–80. The settlement achieved by Plaintiffs' Counsel's efforts exceeds the threshold for what constitutes a substantial recovery for Plaintiffs as noted above.

In addition, Plaintiffs' Counsel is seeking $8,312 in costs reasonably incurred in prosecuting this matter. (Ex A, Agreement, ¶ 32; Ex. B, Bryant Decl. ¶¶ 19, 39)

## IV.     CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement as fair, reasonable, and adequate in all respects and enter the proposed Order Granting Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice attached as Exhibit C.

Respectfully submitted,

**BRYANT LEGAL, LLC**

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)
4400 N. High St., Suite 310
Columbus, Ohio 43214
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

Matthew B. Bryant[3] (0085991)
Esther E. Bryant (0096629)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439

/s/ Katherine S. Decker
Katherine S. Decker (0085600)
Shumaker, Loop & Kendrick, LLP
1000 Jackson Street
Toledo, Ohio 43604
Telephone: (419) 241-9000
Facsimile: (419) 241-6894
Email: kdecker@shumaker.com

*Counsel for Defendant Swanton Welding &*
*Machining Co., Inc.*

---

[3] OSBA Certified Specialist in Labor & Employment Law

Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com
       ebryant@bryantlegalllc.com

*Attorneys for Representative Plaintiffs and the*
*FLSA Collective Members*

**CERTIFICATE OF SERVICE**

I hereby certify that on April, 5, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)